STATE OF NORTH CAROLINA v. TERRY LEE MOORE

No. 843SC1195

(Filed 3 December 1985)

**1. Criminal Law § 48— silence of defendant—use for impeachment**

Defendant's right to remain silent was not violated by the State's cross-examination of defendant regarding his failure to advise police officers of the defense he asserted at trial during the nine months between the incident and the date he first consulted an attorney. Furthermore, defendant was not prejudiced because some of the questions involved a time after he had been given his *Miranda* warnings.

**2. Criminal Law § 46.1— advice by attorney—reason for flight—exclusion of evidence**

The trial court in a murder prosecution did not err in striking the testimony of an attorney consulted by defendant which allegedly showed that defendant's flight was not from a consciousness of guilt but was on the advice of his attorney not to talk with officers about the case where the principal evidence of flight by defendant was a trip to Mexico which occurred before he consulted the attorney.

**3. Criminal Law § 138— aggravating factor—crimes for which not charged**

The trial court's finding as a non-statutory aggravating factor for second degree murder that defendant admitted during cross-examination that he had committed four criminal offenses punishable by more than 60 days' confinement for which he was never charged was based on sufficient evidence and was reasonably related to the purposes of sentencing.

**4. Criminal Law § 138— age of defendant—failure to find as mitigating factor**

The trial court did not abuse its discretion in failing to find as a mitigating factor for second degree murder that defendant was only 17 years old at the time of the crime.

Judge BECTON concurring in part and dissenting in part.

APPEAL by defendant from *Strickland, Judge*. Judgment entered 20 April 1984 in Superior Court, CARTERET County. Heard in the Court of Appeals 27 August 1985.

The defendant was tried for first degree murder. The State's evidence tended to show that on 9 July 1982 the body of Angela Willis Ballard was found on the beach at Atlantic Beach, North Carolina. On the night of the murder the defendant, Terry Lee Moore, his friend Lee Johnson, and Ms. Ballard went to the beach to smoke marijuana. Johnson testified that while there Ms. Ballard had sexual intercourse first with the defendant and then with Johnson. Johnson left the defendant and Ms. Ballard on the beach. At approximately 2:00 a.m. Johnson returned to the motel room he shared with the defendant. The defendant was there. He had been scratched and was swollen around his face, hands and neck. The defendant told Johnson that while he and Ms. Ballard were on the beach two Marines arrived and started a fight. The defendant was knocked unconscious. When he awoke Ms. Ballard appeared to be dead. Neither the defendant nor Johnson reported the crime.

In March 1983 the defendant and Johnson learned that the police were aware of their involvement and both decided to leave town. They went to Georgia, Louisiana, Texas and Mexico and returned to their hometown of Garner after approximately two weeks. The defendant testified to essentially the same things as Johnson. He also explained that he left Garner because he was confused and afraid that he would be arrested.

Michael Denning testified that he talked to the defendant in August 1982 and the defendant told him that the defendant and a "friend had met a girl at the Big Surf and that they had took her out on the beach and gangbanged her and she started making noise and he fucked her up."

The defendant was convicted of second degree murder and sentenced to 45 years in prison. He appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General James Peeler Smith, for the State.*

*Appellate Defender Adam Stein, by First Assistant Appellate Defender Malcolm Ray Hunter, Jr., for defendant appellant.*

WEBB, Judge.

[1] In his first assignment of error the defendant argues that the trial court erred in permitting the prosecutor to question the defendant repeatedly concerning his failure to report the murder to the police. The following occurred on cross-examination:

Q: But you never told it [the defendant's version of events] until the police went up there after you?

A: I never told anything to the police until now.

Q: You never told them anything until now?

A: No, sir.

Q: You never even told them this story about the two guys, did you?

A: No, sir.

Q: They asked you?

A: They asked me about it, yes, sir.

Q: And you refused to tell them, didn't you?

A: Yes, sir.

Q: To tell them anything at all?

A: That's my right.

MR. BOSHAMER: Objection.

THE COURT: Well, that objection is sustained. Ladies and Gentlemen of the Jury, disregard counsel's question and disregard the witness' answer.

Later on cross-examination the prosecutor asked the defendant:

Q: Well, didn't you say before the break that you called him [Captain Rose] to tell him that you didn't want to talk to him?

A: Yes, sir, I told him that I didn't want to talk to him but if he needed to get with me about something that I was here.

Q: But you refused to talk to him?

A: Yes, sir, about the case.

Q: And you never did talk to him about the case?

A: No.

After this exchange the court sustained defense counsel's objection but did not instruct the jury to disregard the question and answer. Still later the prosecutor asked the defendant:

Q: You knew that you'd be found sooner or later, didn't you?

A: I just knew that I needed to come back and get this right.

Q: But you also knew that you didn't need to tell Captain Rose about it?

A: That's what my lawyer—

The court again sustained defense counsel's objection without instructing the jury to disregard the question and answer.

The defendant contends that the prosecutor's repeated references to the defendant's failure to report to police his version of the crime abridged the defendant's right to remain silent. The United States Supreme Court held in *Doyle v. Ohio*, 426 U.S. 610, 49 L.Ed. 2d 91, 96 S.Ct. 2240 (1976) that when a defendant testifies he may not be cross-examined in regard to his remaining silent after he has been warned by the officers of his right to remain silent. In *Jenkins v. Anderson*, 447 U.S. 231, 65 L.Ed. 2d 86, 100 S.Ct. 2124 (1980) the Supreme Court held that a defendant may be cross-examined in regard to pre-arrest failure to tell the officers of a defense he asserts at trial. We followed this rule in *State v. Burnett*, 39 N.C. App. 605, 251 S.E. 2d 717, *disc. rev. denied*, 297 N.C. 302, 254 S.E. 2d 924 (1979). The defendant consulted an attorney in late March or April of 1983. The defendant did not tell the investigating officers anything about the two men he says attacked him and Ms. Ballard during the approximately nine months between the time of the incident and the date he first consulted an attorney. The State was entitled to cross-ex-

amine him as to the failure to so tell the officers during this period. This was the main thrust of the questions asked of the defendant on cross-examination. Although some of the questions may have involved a time after he was given his Miranda warnings we do not believe the defendant was prejudiced. The State elicited, as it had the right to do, testimony that defendant for a period of nine months did not tell the officers he had information in regard to a criminal investigation. We do not believe he was prejudiced because some of the testimony showed he did not tell them of this information after he had received a Miranda warning.

[2]  The defendant called as a witness an attorney whom he contacted when he returned from Mexico. The attorney testified in corroboration of the testimony of defendant. The attorney testified on direct examination that he advised the defendant not to talk to the officers about the case. This colloquy then occurred.

> Q: Did you talk to him about what would likely happen if he did talk to somebody about it?
>
> A: I told him that it was my opinion that if he recounted to the investigators the events that he recounted to me—
>
> MR. MCFAYDEN: Judge, I'm going to object and move to strike his opinion.
>
> THE COURT: Well, that motion to strike is allowed.

The defendant contends it was error to strike this testimony because it was relevant to show his flight was not from a consciousness of guilt but was on the advice of his attorney. We note that the principal evidence of flight by the defendant was his trip to Mexico which occurred before he consulted an attorney. At any rate we believe there was sufficient testimony from the attorney admitted without objection as to the advice given the defendant not to talk to law enforcement officers that the defendant was not prejudiced by the exclusion of this testimony.

On cross examination of the attorney the following colloquy occurred:

> Q: Okay. Now you remember talking with Special Agent Smith on the telephone?
>
> A: Yes.

Q: And Special Agent Smith told you that he would like to sit down with you and your client and discuss this case?

A: He may have.

Q: And you told him that Terry would be going out of town and that you were pretty busy and you'd have to get back together on that?

MR. BOSHAMER: Objection, Your Honor.

    . . . .

THE COURT: Overruled.

Q: (Mr. McFayden) Do you recall that, sir?

A: Not specifically, but I may very well have said that, that I would be unable at that time to meet with him, but I don't recall.

Q: And there never came a date when you and Terry Moore sat down with the officers, or any officer?

A: There did not.

The defendant contends it was error to allow this testimony as to the defendant's not talking to law enforcement officers on the advice of his attorney. The defendant elicited testimony from the attorney as to his advice to the defendant not to talk to the investigative officers. We hold it was not error to allow the State to elicit in more detail testimony as to this advice.

[3]    The defendant's next assignment of error concerns the trial court's finding as a non-statutory aggravating factor at sentencing that the defendant admitted during cross-examination that he had committed four criminal offenses punishable by more than 60 days' confinement for which he was never charged.

G.S. 15A-1340.4(a) provides in part:

If the judge imposes a prison term, . . . he must impose the presumptive term provided in this section unless, after consideration of aggravating or mitigating factors, or both, he decides to impose a longer or shorter term. . . . In imposing a prison term, the judge . . . may consider any aggravating and mitigating factors that he finds are proved by the preponderance of the evidence, and that are reasonably related

to the purposes of sentencing, whether or not such aggravating or mitigating factors are set forth herein, . . . .

One of the aggravating factors the judge is required to consider under the statute is whether "[t]he defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days' confinement." G.S. 15A-1340.4(a)(1)(o). In *State v. Thompson*, 60 N.C. App. 679, 300 S.E. 2d 29, *modified on other grounds*, 309 N.C. 421, 307 S.E. 2d 156 (1983), this Court held that a defendant's statement during cross-examination that he had previously been convicted of two felonies was credible evidence and was sufficient to support the aggravating factor that the defendant had prior convictions for offenses punishable by 60 days' confinement under G.S. 15A-1340.4(a)(1)(o). In the instant case the defendant admitted during cross-examination that he had previously committed the crimes of possession of a schedule I controlled substance, LSD, sale of a schedule VI controlled substance, marijuana, breaking or entering and larceny. This testimony was sufficient to support the court's finding this factor. These offenses are all punishable by more than 60 days' confinement. If the fact of a defendant's prior convictions punishable by 60 days' confinement is reasonably related to the purposes of sentencing, we believe the fact of a defendant's admitted commission of prior criminal offenses also punishable by 60 days' confinement is reasonably related to the purposes of sentencing. This assignment of error is overruled.

[4]  In his last assignment of error the defendant argues that the trial court erred in failing to find as a factor in mitigation that the defendant was 17 years old at the time of the crime. The defendant does not contend that there is a statutory mitigating factor that specifically applies but argues that age is something which is taken into account in many situations under our law and should be taken into account in this case. We believe a person at 17 years of age should be as well aware as any person of the wrong involved in the commission of murder. We do not believe the court abused its discretion in failing to find this mitigating factor.

No error.

Judge MARTIN concurs.

Judge BECTON concurs in part and dissents in part.

Judge BECTON concurring in part and dissenting in part.

I concur in the majority's resolution of all of defendant's as-
signments of error except the assignment of error concerning
"the trial court's finding as a non-statutory aggravating factor at
sentencing that the defendant admitted during cross-examination
that he had committed four criminal offenses punishable by more
than sixty days confinement for which he was never charged."
Ante p. 82. A defendant's admission on cross-examination that he
has been *convicted of* two felonies is not only presumably
verifiable but is also presumptively valid, considering the panoply
of procedural safeguards that accompany a conviction. The same
significance, however, cannot be given to a defendant's admission
on cross-examination that "he has *committed* four criminal of-
fenses punishable by more than sixty days' confinement for which
he was never charged."

I reject the majority's implicit premises that an uncor-
roborated admission — without evidence aliunde — is legally suf-
ficient and that a defendant's characterization of conduct as
criminal — without regard to whether the conduct was justifiable
or excusable — is conclusive. I also cannot subscribe to the reason-
ing that "[i]f the fact of a defendant's prior convictions punishable
by sixty days' confinement is reasonably related to the purposes
of sentencing, . . . the fact of a defendant's admitted commission
of prior criminal offenses also punishable by sixty days' confine-
ment is reasonably related to the purposes of sentencing." Ante
p. 83. This language would allow the enhancement of a sentence
based on conduct for which the State may never have sought pun-
ishment — e.g., the admission by defendant that he slept with his
wife before they got married, *see* N.C. Gen. Stat. Sec. 14-184
(1981), or that he once won $2.00 in a penny ante family poker
game. *See* N.C. Gen. Stat. Sec. 14-292 (Cum. Supp. 1985). That
these examples, although punishable by sixty days' confinement,
are not reasonably related to the purposes of sentencing is clear
beyond cavil. Equally clear is the disincentive the majority opin-
ion provides to defendants to demonstrate rehabilitative potential
by telling the truth about suspected, but unprovable, criminal
conduct. That is, defendants who had hopes the court would find
their truthfulness a mitigating factor may now make fewer admis-

sions for fear that the court will use their truthful admissions as aggravating factors.

The purposes of the Fair Sentencing Act have not been advanced by the majority's resolution of this issue. Believing the trial court erred in finding as a non-statutory aggravating factor that defendant admitted during cross-examination that he had committed four criminal offenses punishable by more than sixty days' confinement for which he was never charged, I dissent.